<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT**
DISTRICT OF NEW JERSEY

| CHAMBERS OF | MARTIN LUTHER KING COURTHOUSE |
|---|---|
| **SUSAN D. WIGENTON** | 50 WALNUT ST. |
| UNITED STATES DISTRICT JUDGE | NEWARK, NJ 07101 |
| | 973-645-5903 |

May 17, 2024

Zach Intrater
Agnifilo Intrater LLP
445 Park Avenue
New York, NY 10022
*Counsel for Defendant Thomas Manzo*

Kendall Renee Randolph
Office of the United States Attorney
970 Broad Street
Newark, NJ 07102
*Counsel for the United States of America*

### <u>LETTER OPINION FILED WITH THE CLERK OF THE COURT</u>

    **Re:**    ***United States v. Thomas Manzo***
             **Criminal Action No. 24-194 (SDW)**

Counsel:

    Before this Court is Defendant Thomas Manzo's ("Manzo" or "Defendant") objection to the Neutral Statement of the Case.[1] (D.E. 19 ("Objection").) This Court having considered the parties' submissions, and for the reasons discussed below, denies Manzo's Objection.

### **<u>DISCUSSION</u>**

A.

---

[1] Although Manzo purports to object to the Government's proposed neutral statement of the case, this Court already set forth the Neutral Statement of the Case at the hearing held on May 1, 2024 (the "May 1 Hearing"). (D.E. 18 at 93.) It is as follows:

> The Government alleges that Defendant Thomas Manzo aided, abetted, and conspired with members or associates of the Lucchese Crime Family by hiring them to commit a violent crime in aid of racketeering – specifically, assault with a deadly weapon. The Government also alleges that the Defendant then concealed documents from the Government during its subsequent investigation of the violent crime in aid of racketeering to hide his role in the charged assault, thereby obstructing justice. The Defendant has entered a not guilty plea to the charges and denies the allegations.

**Background**

This case arises from Manzo's alleged *quid pro quo* with John Perna, a purported member of the Lucchese Crime Family. (*See generally* D.E. 1.) In short, "Perna was to use his connections to the Lucchese Crime Family to arrange for, and commit, an assault on the boyfriend of Manzo's ex-wife, and in return, Manzo would allow Perna to use [Manzo's] wedding venue at a steep discount." (*United States v. John Perna and Thomas Manzo ("Manzo I")*, Crim. No. 20-555, D.E. 95.) Manzo allegedly provided Perna and an accomplice with the victim's personal information, including the victim's residence, business addresses, and vehicle. (D.E. 1 ¶ 11.) And on or about July 18, 2015, Perna, along with an accomplice ("Accomplice-1") who was allegedly trying to gain access to—or maintain or improve his status in—the Lucchese Crime Family, used that information to track down and attack the victim in a parking lot in Passaic County, New Jersey. (*Id.* ¶ 12.) Thereafter, Perna allegedly received his free or discounted wedding reception at the Brownstone. (*Id.* ¶ 13.)

**Procedural History**

On June 26, 2020, a grand jury sitting in Newark, New Jersey returned an indictment against Manzo, charging him with aiding and abetting assault with a dangerous weapon in aid of racketeering, in violation of 18 U.S.C. §§ 1959(a)(3)[2] and 2; conspiring to commit assault with a dangerous weapon and assault resulting in serious bodily injury in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(6); and falsifying and concealing records related to a federal investigation, in violation of 18 U.S.C. §§ 1519 and 2. (*Manzo I*, D.E. 1 (the "2020 Indictment").)

After several years and multiple substitutions of defense counsel, Manzo, through current counsel, moved to dismiss the 2020 Indictment because his rights under the Speedy Trial Act had been violated. (*Manzo I*, D.E. 91.) On February 22, 2024, this Court dismissed without prejudice the 2020 Indictment. (*Manzo I*, D.E. 96.)

On March 21, 2024, a grand jury returned another indictment against Manzo. (D.E. 1.) It contains largely the same allegations and charges as those set forth in the 2020 Indictment.[3] (*Id.*) On April 1, 2024, this Court issued a scheduling order requiring the parties to file any motions *in limine* on or before April 8, 2024. (D.E. 8.) The parties submitted several motions, which this Court addressed at the May 1 Hearing. (D.E. 9–11.)

During the May 1 Hearing, Manzo also requested leave to file supplemental briefing regarding the Government's theory of the case. This Court granted the request, and Manzo submitted the instant brief in which he objects to the Neutral Statement of the Case. (D.E. 19.) Manzo argues that the Neutral Statement of the Case "read[s] out an essential element of [the VICAR] offense – the so-called 'purpose element.'" (*Id.* at 1.) Stated differently, Manzo insists that the Government must prove "[t]hat the violent crime (here, assault with a dangerous weapon)

---

[2] Title 18, United States Code, Section 1959 is entitled "Violent crimes in aid of racketeering activity," and is commonly referred to as "VICAR."

[3] Specifically, the most recent indictment charges Manzo with aiding and abetting assault with a dangerous weapon and assault resulting in serious bodily injury in aid of racketeering, in violation of 18 U.S.C. §§ 1959(a)(3) and 2 (Count I); conspiring to commit assault with a dangerous weapon and assault resulting in serious bodily injury in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(6) (Count II); and falsifying and concealing records related to a federal investigation, in violation of 18 U.S.C. §§ 1519 and 2 (Count III). (*See generally id.*)

in aid of racketeering [was] done with the purpose of gaining entrance to or maintaining or increasing position in a charged enterprise, and that Defendant Manzo . . . acted with that purpose." (*Id.*)

B.

Manzo's arguments in his Objection are unfounded and contrary to well-settled law. Therefore, his request to amend the Neutral Statement of the Case will be denied.

C.

"VICAR was enacted by Congress in 1984 as a violent crime corollary to the RICO statute."[4]  *United States v. Jones*, 566 F.3d 353, 361 (3d Cir. 2009).  It "provides penalties for similar crimes set forth in RICO, such as murder, assault, kidnapping, and threats made in connection with a racketeering enterprise," *Jones*, 566 F.3d at 361, and applies to persons who commit such acts "as consideration for the receipt of, or as consideration for a promise or agreement to pay, anything of pecuniary value from an enterprise engaged in racketeering activity, or for the purpose of gaining entrance to or maintaining or increasing position in an enterprise engaged in racketeering activity," 18 U.S.C. § 1959(a).

The instant dispute arises from the latter phrase—the "for the purpose of" element of the VICAR statute.  Manzo contends that the Government must prove that he acted for the purpose of his, or someone else's, gaining entrance to or maintaining or increasing position in the Lucchese Crime Family.  For the reasons set forth herein, this Court disagrees.

Under either an aiding-and-abetting theory or a co-conspirator theory—both theories the Government appears to be asserting in this case—the Government need not prove that Manzo acted with the intent to enhance his, or someone else's, position in the Lucchese Crime Family.

*First*, under 18 U.S.C. § 2, the federal aiding-and-abetting statute, a defendant may be liable as an accomplice if he "(1) takes an affirmative act in furtherance of [the underlying crime of violence], (2) with the intent of facilitating the offense's commission." *Rosemond v. United States*, 572 U.S. 65, 71 (2014) (citations omitted).  An accomplice's intent "must go to the specific and entire crime charged." *Id.* at 76.  "[F]or purposes of aiding and abetting law, a person who actively participates in a criminal scheme knowing its extent and character *intends* that scheme's commission." *Id.* at 77; see also *Nye & Nissen v. United States*, 336 U.S. 613, 619 (1949) ("In order to aid and abet another to commit a crime it is necessary that a defendant 'in some sort associate himself with the venture, that he participate in it as in something that he wishes to bring about, that he seek by his action to make it succeed.'").  It is axiomatic that "[a] defendant can be convicted as an aider and abettor without proof that he participated in each and every element of the offense." *Rosemond*, 572 U.S. at 73 (alteration in original) (quoting *United States v. Sigalow*, 812 F.2d 783, 785 (2d Cir. 1987)).

Under an aiding-and-abetting theory, the requisite intent that the Government must prove is that Manzo *knew* the extent and character of the scheme—that is, that the principals, Perna

---

[4] RICO "was enacted in 1970 and intended to be used to prosecute the Mafia as well as others who were actively engaged in organized crime."  Congress intended for both RICO and VICAR "to be liberally construed to effectuate [the statutes'] remedial purpose[s]." *United States v. Heilman*, 377 F. App'x 157, 204 (3d Cir. 2010) (citing *United States v. Banks*, 514 F.3d 959, 967 (9th Cir. 2008)).

and/or Accomplice-1, were going to commit a VICAR. More specific to the instant element in dispute, the Government does not have to prove that Manzo's purpose or motive was to increase his, or someone else's, position in the Lucchese Crime Family; rather, it need only show that Manzo *knew* that the principals were seeking, at least in part, to maintain or increase their positions in the Lucchese Crime Family. *See United States v. Frampton*, 382 F.3d 213, 223 (2d Cir. 2004) (explaining that the burden was on the Government to prove that the accomplice "knew that [the principal] was seeking to increase his position in the [enterprise] and acted toward that end").

Manzo's argument is unsupported by case law and seemingly stems from his conflating motive with intent. For instance, Manzo's brief relies substantially on a misunderstanding of *United States v. Concepcion*, 983 F.2d 369 (2d Cir. 1992). There, the Second Circuit stated that "an aider and abett[o]r must share in the principal's essential criminal intent, [and] 'the principal must be shown to have had the "essential criminal intent."'" *United States v. Concepcion*, 983 F.2d 369, 383 (2d Cir. 1992) (quoting *United States v. Elusma*, 849 F.2d 76, 78 (2d Cir. 1988), *cert. denied*, 489 U.S. 1097 (1989)). Criminal intent, however, is different from motive, and the Second Circuit's discussion in *Concepcion* is clear on that score. *See id.* at 381, 383.

For the sake of clarity in the instant case, the motive-intent distinction can be drawn out as follows: To prove its case under an aiding-and-abetting theory, the Government must show that the principals—Perna or Accomplice-1, or both—acted "for the purpose of gaining entrance to or maintaining or increasing position in an enterprise engaged in racketeering activity," and that Manzo *knew* of that motive—perhaps because he knew of their affiliations with the Lucchese Crime Family—when he enlisted one or both of them to beat up the victim.

**Second**, Defendant's contentions fare no better under the *Pinkerton* theory of liability.[5] In *Pinkerton v. United States*, 328 U.S. 640 (1946), "the Supreme Court held that the criminal act of one conspirator in furtherance of the conspiracy is attributable to the other conspirators for the purpose of holding them responsible for the substantive offense." *United States v. Lopez*, 271 F.3d 472, 480 (3d Cir. 2001) (cleaned up). Under *Pinkerton*, a defendant is liable for substantive offenses committed by co-conspirators if (1) the defendant is a party to the criminal conspiracy, (2) one or more of the co-conspirators committed the substantive offense in furtherance of the conspiracy, and (3) the commission of the substantive offense was reasonably foreseeable. *United States v. Ramos*, 147 F.3d 281, 286 (3d Cir. 1998).

None of the foregoing elements require the Government to prove that Manzo conspired with Perna or Accomplice-1, or both, for the purpose of their advancement in the Lucchese Crime Family. Defendant does not appear to argue as much, nor does he cite any case law to that end.[6]

---

[5] While Manzo does not appear to contest the criminal intent that the Government must prove under a *Pinkerton* theory, this Court will address it in any event.

[6] To the extent Manzo is arguing that the Indictment is unclear as to whether he was charged as a principal, accomplice, or co-conspirator, it is of no matter. *Lopez*, 271 F.3d at 480–81 ("[A] conspiracy need not be charged in order for *Pinkerton*'s doctrine to apply." (collecting cases)); *United States v. Pungitore*, 910 F.2d 1084, 1132 (3d Cir. 1990) ("Federal courts have long recognized that a defendant indicted as a principal may be convicted upon proof that he aided and abetted the charged offense."); *see also United States v. Whitted*, 734 F. App'x 90, 94 n.4 (3d Cir. 2018) ("[I]ndictments do not recite the government's theory of proof . . . . The function of a federal indictment is to state concisely the essential facts constituting the offense, not how the government plans to go about proving them.").

4

In sum, under either the aiding-and-abetting theory or the *Pinkerton* theory, the Government need not demonstrate that Manzo acted for the purpose of enhancing his, or someone else's, position in the Lucchese Crime Family.

## CONCLUSION

For the foregoing reasons, Manzo's Objection is **DENIED**.[7] The Neutral Statement of the Case will remain as written. An appropriate order follows.

    /s/ Susan D. Wigenton
**SUSAN D. WIGENTON, U.S.D.J.**

Orig:  Clerk
cc:    Parties

---

[7] Manzo's Objection is untimely. Defense counsel argued at the May 1 Hearing that the Government's theory of the case was just revealed during the submissions for the motions *in limine*. However, counsel was aware of the Government's theory of the case since at least February 2024. As Manzo wrote in his briefing on the motion to dismiss the 2020 Indictment, "the Government shoe-horned a non-organized crime member into the narrow scope of a § 1959(a) prosecution is by claiming that Manzo aided and abetted John Perna in maintaining or increasing Perna's role in the Lucchese Crime Family." The instant arguments should have been raised in an earlier motion. Notwithstanding, the substance of Manzo's arguments, as addressed herein, is unpersuasive.